STATE of Tennessee, Appellee,

v.

Lorene MILLBROOKS, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

April 10, 1991.

**442**

Leslie I. Ballin, Memphis, for appellant.

Charles W. Burson, Atty. Gen., Joel W. Perry, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., P.T. Hoover, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

Charged in a three count indictment with the unlawful sale, possession with intent to sell and possession with intent to deliver cocaine, the appellant was found guilty of only the possession with intent to deliver and received a sentence of six years in the Shelby County Correctional Center as a Range I standard offender. The jury fixed her fine at $5,000.00. On appeal she has presented eleven issues, but has waived three of them.

Even though she has not challenged the sufficiency of the convicting evidence, a short recitation of the facts will help place the issues in perspective.

On July 9, 1988, Wanda Edwards and Zachary Braswell were both Deputys Sheriff of Shelby County and working as undercover narcotics agents. At approximately 10:00 P.M. they went to 1203 Orleans in Memphis and asked for "Lorene." The person who answered the door went to a back room and got the appellant. The undercover officers told the appellant that they wanted to purchase some cocaine. In response to that request the appellant asked what size "rock" they wanted. Each officer responded that they wanted to purchase a "twenty-five cent piece," i.e. a piece of crack cocaine costing $25.00. The appellant went into another room and returned with about four white rocks. She sold each officer a rock containing what was later determined to be cocaine. She gave one to Ms. Edwards and the other to Mr. Braswell, for which each officer paid her $25.00.

The appellant presented an alibi defense, contending that on the date that the officers testified that they bought cocaine from her she was in Madison, Arkansas attending a party. Through the testimony of her nephew she asserted that she was in Arkansas that day. Her nephew's wife confirmed that her husband went to Arkansas that weekend, but she did not see the appellant leave with him.

▉ In the first three issues the appellant contends that it was error for the court to allow testimony concerning the investigation of her as a known drug dealer, to allow testimony concerning drug sales by other individuals at her address and to allow testimony from the undercov-

er agents that they bought drugs from her in the past.

Ms. Edwards testified that they went to that address to "make a purchase of cocaine from a known drug dealer by the name of Lorene." Defense counsel objected and the trial judge promptly sustained the objection, telling the jury that there was "no proof that anybody sold any drugs yet" and that they · could not "assume something just because that statement is made." They were then told to "disregard that."

Later, the same witness testified that "(w)ell, the first time that we had—well, we had went there previously, and we had bought from her son." Again defense counsel objected and asked to approach the bench. At the bench counsel asked for a mistrial. After denial of the mistrial the trial judge instructed the jury as follows:

> Ladies and gentlemen, there occasionally will be testimony like this, and you cannot consider the fact that if in fact they did buy from somebody else at that house, that that doesn't go to the guilt or innocence of Ms. Millbrook. You understand that. Okay.

Immediately after that instruction to the jury, the witness was asked the following question and gave the following response:

Q. (By Mr. Hoover) All right. Now, you had a conversation, and I think we were at the point where you were telling her that you had bought from the son earlier?

A. Yes, sir. I told her that we had purchased some from her son earlier and it wasn't as good as what she had. She normally sells us. And so she just went back—

Counsel again objected. The trial judge conducted a jury-out hearing, after which the following occurred:

Q. (By Mr. Hoover) Ms. Edwards, I think you were at the point where you said you had talked to Ms. Millbrook about that the stuff you had bought from the house earlier was not as good as what you had bought from her earlier or at other times?

A. Correct.

Q. Had you in fact ever bought any cocaine from Ms. Edwards before this—

A. I'm Ms. Edwards.

Q. I mean from—excuse me. From Ms. Millbrook?

A. No, sir, I hadn't.

Q. What happened after you relayed that to Ms. Millbrook?

A. She then went into the ˙back room and when she came back out, I told her what we wanted.

The decision whether to grant a mistrial is within the discretion of the trial judge, whose action will not be disturbed on appeal unless there was an abuse of that discretion. *State v. Hall,* 667 S.W.2d 507, 510 (Tenn.Crim.App.1983). Generally a mistrial will be declared in a criminal case only when there is a "manifest necessity" requiring such action by the trial judge. *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Crim.App.1977).

There was no "manifest necessity" for a mistrial in this case. Objections interposed by the appellant's counsel were sustained and the trial judge gave curative instructions to the jury. It is presumed that the jury followed the trial judge's instructions not to consider inadmissible evidence. *Klaver v. State,* 503 S.W.2d 946, 950 (Tenn. Crim.App.1973). Moreover, the witness made it clear that she had not actually purchased drugs from the appellant in the past, but told the appellant that she had in order to gain the appellant's trust and confidence. These issues have no merit.

In another issue the appellant contends that it was error for the trial judge to prohibit her counsel from questioning Mr. Braswell, one of the undercover deputies, about alleged instances of misconduct.

Before Mr. Braswell testified, the state made an oral motion in limine requesting that defense counsel be prohibited from cross-examining him about his suspension from his position as an officer. From the discussion at the hearing on the motion, it appears that the deputy was suspected of murder in the first degree in connection with his activities as a law enforcement

officer. The defense counsel argued that the evidence should be admitted because it related to the officer's discharge from his duties. Noting that defense counsel had not supported his response to the motion with any case law, the trial judge granted the motion in limine.

The appellant now contends that the evidence about the deputy's suspension would have been probative of his truthfulness. The appellant also asserts that the trial judge should have held a jury-out hearing to determine if the probative value of the testimony outweighed its prejudicial effect.

In *State v. Morgan*, 541 S.W.2d 385, 388 (Tenn.1976), our Supreme Court adopted Rule 608, Federal Rules of Evidence, allowing evidence of specific instances of a witness' conduct to support or attack his credibility. The Supreme Court required the trial judge to hold a jury-out hearing to determine if the probative value of the evidence of prior bad acts outweigh their prejudicial effect. *Id.* at 390.

Here the appellant had the opportunity during the hearing on the motion in limine to call the witness and to determine whether there was any basis for the inquiry concerning the allegations. The witness was not called and there was no offer of proof. Thus, there is simply nothing for this Court to review concerning that serious allegation against the officer. This issue has no merit.

■ In another issue the appellant contends that the trial judge erred by excusing one of the members of the jury panel without the consent of the appellant or his counsel. After the lunch recess the trial judge made the following announcement:

I have a concern that arose at lunch. It has been lingering with the Court all day, but it is time for the Court to say something to the lawyers about it.

Earl Farrow, who would be Juror number three, F-a-r-r-o-w, was impaired somewhat, in the Court's opinion, not sufficiently for me to be too concerned about it, when he arrived at 11:30 today. But then after lunch the Court noticed a stronger odor of alcohol on his breath and to the point that he was having some trouble negotiating the hall down toward the jury room.

I have noticed his fight to keep his eyes open during the testimony this afternoon, and I am going to bring him in and ask him about what he had to drink at lunch.

And if I find that he is impaired, gentlemen, I am going to excuse him from the case. So, we need to bring Mr. Farrow in.

The juror was then brought into the courtroom and the following occurred:

THE COURT: Mr. Farrow, the Court has noticed recently, in other words during the noon recess, that you returned and I felt like you had had some alcohol earlier in the day, and I feel like you did again during lunch. And I need to ask you about that.

JUROR FARROW: No, it wasn't through the day. It was about 2:00 o'clock this morning.

THE COURT: Is that right?

JUROR FARROW: Yes, sir.

THE COURT: What did you do at 2:00 o'clock this morning?

JUROR FARROW: Well, I went out.

THE COURT: Sir?

JUROR FARROW: I went out.

THE COURT: What time did you get in?

JUROR FARROW: About 2:00 something.

THE COURT: This morning?

JUROR FARROW: Yes, sir.

THE COURT: And so the alcohol that I have smelled all day is just a carryover from last night?

JUROR FARROW: Yeah, because I ain't had no gum or nothing.

THE COURT: Sir?

JUROR FARROW: I ain't had no gum or nothing.

THE COURT: Is that right?

JUROR FARROW: (Nods head affirmatively.)

THE COURT: Have you ever had a problem with alcohol?

JUROR FARROW: No, sir. I've kept my job.

THE COURT: Have you ever been arrested or convicted for public drunk?

JUROR FARROW: Well, I have been arrested for public drunk in Tennessee.

THE COURT: Yes, How long ago?

JUROR FARROW: I don't know.

THE COURT: Would June the 19th, 1989 sound about right?

JUROR FARROW: 9/19 does.

THE COURT: June 19th, 1989, that would be 6/1989.

JUROR FARROW: 9/19/89.

THE COURT: Is that right?

JUROR FARROW: Yes.

THE COURT: Well, okay.

Gentlemen, I'm going to excuse him from the case. I'm sorry. I'm concerned. I've watched his actions during the course of the trial today. Whether it is from being up all night or whether it is something that has occurred during the course of this trial, I am concerned about impairment, and I am not going to let him deliberate.

With that, that being discretionary with the Court, I have built my record, I am comfortable with it, and I am going to excuse him.

He will be replaced by Dawn Erickson.

Defense counsel then noted his objection to the excusal of the juror and the impaneling of the alternate juror.

T.C.A. § 22–2–312 provides as follows: Should a juror, either in a civil or criminal action, during the process of a trial, *become so unwell* that, in the opinion of the court, he is unable to serve, he may be discharged, and another juror summoned instanter, impaneled, and the trial recommenced. (Emphasis added)

The term "unwell" is defined as "not well; ailing; ill; sick." *Webster's New World Dictionary of the American Language,* 1559 (2d College Ed.1980).

Relying on *Rowe v. State,* 30 Tenn. (1 Humph.) 491, 493 (1851), the appellant contends that unless it is shown that the juror drank "ardent spirits" "to excess so as to disqualify (him) from deliberating and considering the case properly" that he should not have been discharged.

It is clear from the record that the juror was "unwell" and was properly excused. To be suffering from a hang-over from the use of alcohol could certainly be described as "ailing" or even as "sick," depending upon the extent of one's disability. As the trial judge noted, the juror had difficulty in walking the hallway to the jury room. That would certainly indicate that he was "not well" at the time.

Rule 24(e), Tenn.R.Crim.P., has expanded the authority for replacing a regular juror with an alternate to the replacement of any jurors who "become or are found to be unable or disqualified to perform their duties." The Tennessee Rules of Criminal Procedure, like their counterpart Rules of Civil and Appellate Procedure are "laws" of this state. *Tennessee Department of Human Services v. Vaughn,* 595 S.W.2d 62, 63 (Tenn.1980).

■ It is within the trial judge's discretion to seat an alternate juror who has been selected and accepted by the parties when a regular juror must be removed. Rule 24(e)(1), T.R.Crim.P., *Dorsey v. State,* 568 S.W.2d 639, 645 (Tenn.Crim.App.1978). One challenging the trial judge's decision to do so has the burden of demonstrating how she was prejudiced by the seating of the alternate juror. *State v. Max,* 714 S.W.2d 289, 294 (Tenn.Crim.App.1986). The appellant has not even alleged, much less proven, any prejudice from the seating of the alternate juror in place of the juror who was excused.

■ It must be borne in mind that it is the trial judge, not counsel nor the parties, who is ultimately responsible for every aspect of the orchestration of a trial. *State v. McCray,* 614 S.W.2d 90, 93 (Tenn.Crim. App.1981). In dealing with the qualifications of the jurors and their ability to sit, the latitude allowed the trial judge is, of necessity, broad. *Id.* Whether this juror is described as "unwell" or simply "unable" to perform his duties, it is clear that the trial judge properly excused him. This issue has no merit.

■ In another issue the appellant contends that the trial judge erred by failing

to instruct the jury concerning the punishment for a "casual exchange" of drugs.

The trial judge charged the jury concerning the inference from "casual exchange" as a defense to the element of intent to deliver or sell under the charged offenses in accordance with T.C.A. § 39–6–417(a)(2). Furthermore, contrary to the appellant's assertion, the trial judge instructed the jury concerning the punishment for the lesser offense of so-called "simple possession" as required by T.C.A. § 40–35–201(b), which provides that upon request the trial judge shall charge "the possible penalties for the offense charged and all lesser included offenses."

There is no punishment for "casual exchange." The casual exchange provision of T.C.A. § 39–6–417(a)(2) simply deals with the inference that there was no sale when there was a "casual exchange among individuals of a small amount of controlled substances." In this case, there was no requirement that the jury even be instructed concerning a casual exchange. The state's theory was that there was a *sale* of cocaine by the appellant to the two undercover officers. The appellant's theory was that there was *no sale* because she was in Arkansas at the time. Under her defense theory, there was no requirement of the charge concerning casual exchange or the lesser included offense. This issue has no merit.

 In another issue the appellant contends that the trial judge erred by allowing the jury to find her guilty of possession with intent to distribute, when the state's theory of the case was that there was a sale. She contends that the verdict should have either been guilty of selling cocaine or an outright acquittal.

 Each count of an indictment is a separate charge and each count is looked upon as a separate indictment. An acquittal on one or several charges in a multi-count indictment does not preclude a conviction under one or more of the other charges. *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn.1973). Although the actions of a jury are sometimes inscrutable, a verdict is not infirm where there is sufficient evidence upon which the verdict can be based. The appellant obviously had possession of the cocaine with the intent to distribute, for she did, in fact, distribute it. There was ample, indeed overwhelming, evidence from which any rational trier of fact would find the appellant guilty of possession of cocaine with intent to distribute beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia*, 443 U.S. 307, 314–324, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

 In her final issue the appellant contends that her sentence of six years was excessive.

Since this offense was committed after July 1, 1982 and before November 1, 1989 and the appellant was sentenced after November 1, 1989, her sentencing was under the provisions of the Tennessee Criminal Sentencing Reform Act of 1989. T.C.A. § 40–35–117(b). Thus, our review is *de novo* on the record, with a presumption that the determinations of the trial judge were correct. T.C.A. § 40–35–401(d).

Possession of cocaine with the intent to deliver is now classified as a Class C felony. T.C.A. § 40–35–118. For a Range I standard offender the range of punishment is not less than three nor more than six years. T.C.A. §§ 40–35–111(b)(3) and 40–35–112(a)(3). She contends that there are no enhancement factors and, therefore, she should have received the minimum sentence.

T.C.A. § 40–35–210(c) provides that the presumptive sentence shall be the minimum sentence in the range if there are no enhancement or mitigating factors.

As enhancement factors the appellant has a previous history of criminal convictions or criminal behavior. T.C.A. § 40–35–114(1). She has had a number of misdemeanor convictions in state and federal courts for drug related offenses. As an additional enhancement factor, the trial judge found that she had no hesitation in committing a crime where the risk to human life was high. T.C.A. § 40–35–114(10). Considering the potency of crack cocaine, it certainly can be said that there is a high

risk to human life from the distribution of that substance. It can also be said that the crime involved great potential for bodily injury, T.C.A. § 40–35–114(16), since the use of crack cocaine is, without a doubt, injurious to the human body.

Defense counsel has not pointed out any mitigating factor and we have been unable to discern any.

Given the presence of the applicable enhancement factors and the total absence of any mitigating factors, sentencing at the top of the range was entirely proper. We adopt the sentence of the trial judge for this appellant for this offense as our own. The issue challenging the sentence has no merit.

Finding no merit to any of the issues, the judgment is affirmed.

BYERS, P.J., and WILLIAM P. NEWKIRK, Special Judge, concur.