# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 29, 2013

## STATE OF TENNESSEE v. JAMES RYAN STEPHENSON

**Appeal from the Circuit Court for Rhea County**
**No. 17179      J. Curtis Smith, Judge**

**No. E2012-01914-CCA-R3-CD - Filed February 6, 2013**

The defendant, James Ryan Stephenson, was convicted by a Rhea County jury of reckless homicide, a Class D felony, and was sentenced by the trial court as a Range II, multiple offender to eight years in the Department of Correction, to be served consecutively to his sentence in a burglary case for which he was on probation at the time of the homicide. On appeal, he argues that the trial court erred by: (1) granting the State's request to remove a juror on the second day of trial; (2) allowing the State to impeach his credibility with his prior convictions for theft and burglary; (3) issuing a jury instruction on the impeachment of a witness after the testimony of a defense witness but not after the testimony of a State witness; and (4) failing to apply any mitigating factors in sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

B. Jeffery Harmon, District Public Defender; and Mechelle L. Story, Assistant Public Defender, for the appellant, James Ryan Stephenson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; James Michael Taylor, District Attorney General; and Will Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of the March 3, 2009 stabbing death of the victim, Christopher

Reagan, which occurred at the hands of the defendant after the victim, the victim's brother, and three other men went to the defendant's home to confront him about his alleged theft of a video game from one of the victim's friends. The defendant was indicted for the voluntary manslaughter of the victim, tried before a jury, and convicted of the lesser-included offense of reckless homicide, a Class D felony.

The undisputed evidence at trial was that a verbal confrontation between the defendant and the victim and his brother escalated into a physical fight on the front porch of the defendant's home, although there were conflicting accounts about which man first put his hands on the other or whether the victim's companions joined in the fight. According to the State's witnesses, the defendant's brother and a friend had broken up the fight and the victim and the victim's brother had turned to leave when the defendant grabbed a sword-cane from inside his home and stabbed the victim in the side. These accounts of the location of the stabbing were corroborated by the physical evidence, which revealed no signs of a struggle or any blood inside the home but a heavy blood spray on the outside wall eighteen inches from the front door. The defendant and his witnesses, by contrast, testified that the stabbing occurred either inside the home or at the door's threshold after the victim continued his assault against the defendant by opening the front door and pushing his way inside.

There were also conflicting accounts about what happened after the stabbing. The victim's companions testified that the defendant went out into the yard, pumped his arms in the air, and proudly bragged that he was a "bad motherfucker" and that no one should "mess" with him. The defendant and his witnesses provided a completely different picture, testifying that the victim's friends appeared unconcerned about the victim and that the defendant went outside, carried the victim to his truck, and urged the victim's companions to take him to the hospital immediately. After the victim's companions left with the victim, the defendant called 911 to report the incident. In the 911 call, the defendant said that he stabbed the victim in self-defense and in the defense of his family after the victim and four or five other men came inside his home, where his girlfriend and three young children were present, and assaulted him.

A combined sentencing and revocation of probation hearing was held on October 13, 2010, at which the State introduced the defendant's presentence report, which reflected that the twenty-nine-year-old defendant had a substantial criminal history that included at least two felonies and twenty-six misdemeanor convictions, as well as a number of pending charges.

The defendant's probation officer, James Janow, testified that the defendant's probation had previously been revoked in a burglary case based on his having picked up new burglary and theft charges. He said that he was currently supervising the defendant's

probation in a burglary of an automobile case, for which he had filed several revocations of probation and addendums to those revocations based on a number of different probation violations. Officer Janow reviewed in detail those violations, which, in addition to technical violations and the defendant's admitted use of marijuana, involved the defendant's having been arrested or charged in a number of new cases, including for public intoxication, theft, burglary, unlawful drug paraphernalia, criminal trespass, and domestic assault. On cross-examination, he conceded that the defendant was emotional each time he discussed the homicide case with him.

The State presented several other witnesses in the revocation portion of the hearing, including Officer Jesse Wilkey of the Rhea County Sheriff's Department, who related his witnessing of the events that led to the defendant's March 15, 2010 arrest for public intoxication and possession of unlawful drug paraphernalia and his October 7, 2010 arrest for domestic assault; Shannon Leffew, who testified about how her daughter's inoperable vehicle had been stolen from her property after the defendant expressed an interest in it; and Rhea County Sheriff's Department Deputy Charlie Jenkins, who described how he discovered that the defendant had sold Leffew's vehicle to a recycling yard.

At the sentencing portion of the hearing, the victim's father, David Reagan, testified about the anguish that the entire family, especially the victim's daughter, had suffered as a result of the defendant's killing of the victim. The defendant's aunt, Beverly Coxey, and mother, Sandy Francisco, each testified on the defendant's behalf that the defendant was remorseful for his actions and that he had been very involved in helping to parent his girlfriend's three minor children.

On November 1, 2010, the trial court entered a detailed written sentencing memorandum in the case. The court found four enhancement factors applicable to the offense: the defendant's previous history of criminal convictions or criminal behavior, to which the court assigned significant weight; the defendant's failure to comply with the conditions of a sentence involving release into the community, to which the court again assigned significant weight; the defendant's employment of a deadly weapon during the commission of the offense, to which the court assigned moderate weight; and the fact that the felony was committed while the defendant was released on probation, to which the court assigned significant weight. See Tenn. Code Ann. § 40-35-114(1), (8), (9), (13) (2010).

The trial court considered, but rejected, the defendant's proposed mitigating factors that he acted under strong provocation; that substantial grounds existed tending to excuse or justify his conduct; that he was motivated by a desire to provide necessities for himself or his family; that he assisted the authorities in locating or recovering any property or person involved in the crime; that he committed the crime under such unusual circumstances that

it was unlikely that a sustained intent to violate the law motivated his conduct; that he acted under duress; and that his actions occurred in the defense of his home and family. See id. § 40-35-113(2), (3), (7), (10), (11), (12), and (13).

Finding that the defendant was not a suitable candidate for probation or other alternative sentencing, the trial court sentenced him as a Range II, multiple offender to eight years in the Department of Correction, to be served consecutively to his sentence in the felony case for which he was on probation at the time he committed the instant offense.

## ANALYSIS

### I. Dismissal of Juror

The defendant first contends that the trial court erred by granting the State's request that a juror be removed during the second day of trial. The State argues that the defendant has failed to show that the trial court abused its discretion in excusing the juror to avoid the appearance of impropriety or that the defendant was prejudiced by the seating of the alternate juror. We agree with the State.

"It is within the trial judge's discretion to seat an alternate juror who has been selected and accepted by the parties when a regular juror must be removed." State v. Millbrooks, 819 S.W.2d 441, 445 (Tenn. Crim. App. 1991); see also State v. Cleveland, 959 S.W.2d 548, 551 (Tenn. 1997); State v. Max, 714 S.W.2d 289, 293 (Tenn. Crim. App. 1986); Tenn. R. Crim. P. 24(f)(2)(B). The party challenging the trial court's substitution of a juror bears "the burden of demonstrating how she was prejudiced by the seating of the alternate juror." Millbrooks, 819 S.W.2d at 441 (citing Max, 714 S.W.2d at 294).

After the State's sixth witness had concluded his testimony, the prosecutor informed the trial court that the victim's aunt and mother had told him that morning that they had seen one of the jurors engaged in conversation with the defendant's girlfriend before the jury was sworn. At the jury-out hearing that followed, the victim's aunt, Jewell Frazier, testified that before the trial began she saw a man and a woman enter the courtroom talking together. She said that they took the first and second seats in the front row of the courtroom and that she sat behind them in the third row. She did not recognize either individual, but when the victim's mother came into the courtroom, she told her that the woman was the defendant's girlfriend. Frazier stated that she did not think anything more about it until the jury panel was being called and the man stood up, which shocked her and caused her to make a note of his name. Frazier estimated that the juror and the defendant's girlfriend sat together for at least thirty minutes and said that they engaged in sporadic conversation during that time. She could not, however, hear the conversation.

-4-

The victim's mother, Gina Smith, testified that she saw the juror and the defendant's girlfriend enter the courtroom together and talk to each other while seated in the front of the courtroom, in a manner which led her to believe that they knew each other. She said she was unable to hear any of their conversation.

The juror testified that he did not know the defendant's girlfriend and that the extent of their conversation consisted of his asking her, after she sat beside him, whether she had ever been picked as a juror before and her reply that she was the girlfriend of the accused.

The State argued that, despite the juror's innocuous explanation of the exchange, he should be removed and replaced with the alternate juror in order to avoid the appearance of impropriety. Defense counsel objected, arguing that the juror had done nothing inappropriate and that the defense might have chosen to exercise their peremptory strikes differently had they known that particular juror would be excluded from the panel.

The trial court noted for the record that it believed the juror's account of the exchange. It further noted, however, that it was an emotionally charged trial in which some of the victim's relatives had seen the juror seated beside and engaged in conversation with the defendant's girlfriend and that it was therefore going to exercise its discretion to replace the juror with the available alternate to "to preserve the appearance" that the trial was being properly conducted. The court also expressed its intention to change the courtroom seating arrangements for future trials.

We find no error in the trial court's decision to replace the juror with the alternate. As the State correctly points out, the defendant is unable to show how he was prejudiced by the seating of the alternate juror. Accordingly, we conclude that he is not entitled to relief on the basis of this issue.

## II. Admissibility of Prior Convictions for Impeachment Purposes

The defendant next contends that the trial court erred by allowing the State to impeach his testimony with his prior convictions for burglary and theft, arguing that they unfairly prejudiced his case by bolstering the State's theory that the confrontation between himself and the victim was precipitated by his theft of a video game from one of the victim's friends. The State responds by arguing that the trial court properly ruled that the probative value of the defendant's convictions for crimes involving dishonesty outweighed any unfair prejudicial effect. We agree with the State.

A conviction may be used to impeach the testimony of an accused in a criminal prosecution if the following four conditions are satisfied: (1) the conviction is for a crime

punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (3) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (4) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999).

Two factors should be considered when deciding whether the probative value of a prior conviction outweighs its unfair prejudicial effect. Mixon, 983 S.W.2d at 674. First, "[a] trial court should . . . analyze the relevance the impeaching conviction has to the issue of credibility." Id. (citation omitted). Second, if the trial court finds that the prior conviction is probative of the defendant's credibility, then the court should "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" Id. (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)). The more similar the impeaching conviction is to the offense for which the defendant is on trial, the greater the risk of a prejudicial effect to the defendant. Id.

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003).

We find no abuse of discretion in the trial court's ruling on this matter. Burglary and theft are offenses involving dishonesty and, as such, are highly probative of credibility. See State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997); State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993). After considering the arguments of counsel at the pretrial hearing, the trial court concluded that the convictions were admissible because their probative value on the credibility of the defendant, given his claim of self-defense, outweighed any prejudicial effect. We agree and, accordingly, conclude that the defendant is not entitled to relief on the basis of this issue.

### III. Jury Instruction on Impeachment of a Witness

As his third issue, the defendant contends that he was unfairly prejudiced by the fact that the trial court issued a jury instruction on the impeachment of a witness by the use of prior convictions following the testimony of one of his defense witnesses but not following the earlier testimony of one of the State's witnesses. He argues that by not issuing the instruction following the testimony of the first witness, the trial court "allowed an appearance to be created that the defense witness was less credible than the State witness due to the

disparity in instruction."

During direct examination, one of the State's witnesses acknowledged that he had a September 2009 guilty plea conviction for aggravated burglary. On cross-examination, he elaborated that he had an outstanding warrant at the time of the stabbing for criminal trespass and failure to appear, that he had been charged with aggravated burglary in June 2009, and that he had pled guilty to the offense in September 2009 and been sentenced to four years probation. Neither party requested any instruction of the impeachment of a witness following this witness's testimony, and none was given.

Later, one of the defense witnesses testified on direct examination that he had pled guilty to theft around the time of the stabbing and been sentenced to one year of probation. Immediately afterwards, the trial court, *sua sponte*, instructed the jury that it was to consider such evidence "on the issue of credibility. That is, whether his testimony is impeached by that conviction." The trial court also instructed the jury, during a longer instruction on witness credibility at the close of the proof, that it could consider whether a witness's credibility had been impeached by evidence of conviction of a crime. At no point during the trial did the defendant raise any objection to the timing of the trial court's instructions.

The State argues that the defendant, who failed to take any action at trial to remedy the alleged error, cannot show any prejudice based on the timing of the trial court's instruction. We agree and, accordingly, conclude that the defendant is not entitled to relief on the basis of this issue.

## IV. Failure to Apply Proposed Mitigating Factors

Lastly, the defendant contends that the trial court erred by failing to apply his proposed mitigating factors in setting the length of the sentence. Specifically, he argues that the circumstances of the offense, which included the presence of minor children in his home when the victim and his companions arrived to confront him, support a finding that substantial grounds existed to excuse his conduct and that he acted in unusual circumstances such that it was unlikely that his criminal conduct was motivated by a sustained intent to violate the law. The State disagrees, arguing that the trial court acted within its discretion in rejecting the proposed mitigating factors. We, once again, agree with the State.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

The record in this case reflects that the trial court imposed a sentence within the defendant's applicable range after considering the relevant purposes and principles of sentencing and the proposed enhancement and mitigating factors. We, therefore, affirm the sentencing determinations of the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-8-