IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 1, 2012 Session

**STATE OF TENNESSEE v. DELMONTA HILL**

**Appeal from the Criminal Court for Shelby County**
**No. 10-07051   Paula L. Skahan, Judge**

**No. W2011-02335-CCA-R3-CD  - Filed May 24, 2013**

The Defendant, Delmonta Hill, entered a best interest plea to reckless aggravated assault, a
Class D felony.  *See* T.C.A. § 39-13-101 (2010).  The trial court sentenced the Defendant as
a Range I, standard offender to two years on probation.  On appeal, the Defendant contends
that the trial court erred (1) by failing to classify him as an especially mitigated offender and
(2) by denying him judicial diversion.  We affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE
and ROGER A. PAGE, JJ., joined.

Michael Ryan Working, Memphis, Tennessee, for the appellant, Delmonta Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney
General; Amy P. Weirich , District Attorney General; and Brooks Irvine, Assistant District
Attorney General, for the appellee, State of Tennessee.

**OPINION**

        This case relates to the robbery and non-fatal shooting of Salaam Ali Starks.  The
Defendant and his brother were indicted for especially aggravated robbery in connection with
the robbery and shooting.  At the trial, the jury acquitted the Defendant of the charged
offense and all lesser included offenses, except aggravated assault to which it could not reach
a verdict.  The Defendant subsequently entered a best interest plea to reckless aggravated
assault and requested judicial diversion.

According to the State's recitation of the facts,

on June 16th, 2010 . . . in Memphis, Shelby County, Tennessee, Mr. Salaam Starks was at the home where Mr. Delmonta Hill lived along with other family members. He and Mr. Hill got into an altercation . . . over Mr. Starks' phone.

They began to fight and struggle. At some point Mr. Hill got a gun, revolver, and Mr. Starks began to run away from Mr. Hill[. H]e fired that weapon several times striking Mr. Starks in the lower back and paralyzing him for life.

All these events occurred . . . in Shelby County, Tennessee. Now, for the record the State's reason for reduction when he went to trial original[ly] on this [was] the jury was hung on the aggravated assault based on Mr. Hill's testimony that he fired the weapon in self-defense and it had come from Mr. Starks himself.
And also based on the negotiations and discussions between Defense counsel and the State we decided to proceed by offering him reckless aggravated assault under the circumstances.

The Defendant stipulated that those would have been the State's facts had the case gone to trial again.

At the sentencing hearing, the presentence report was received as an exhibit. The report showed a previous conviction for violating the driver's license law. The Defendant had no gang affiliations. He completed the eleventh grade and left school to care for his sick mother. The Defendant claimed his mental and physical health were excellent. He reported drinking alcohol for the first time when he was twenty-three years old but stated that he stopped drinking eight years before the hearing. The report showed that the Defendant was unemployed and that he claimed to have worked as a "yard man" for S&H Landscaping.

The victim testified that he, the Defendant, and the Defendant's brother were sitting on the porch visiting. He said that he got up to leave and that the Defendant began searching his pockets. He said that the three men began "tussling around," that he broke free, and that he saw the Defendant's brother with a .357 revolver. He said that he ran away, that the Defendant took the gun from his brother, and that the Defendant chased and shot him. He said he heard five or six shots and denied bringing the gun to the Defendant's home. He said he was paralyzed from the waist down.

The victim testified that before the shooting, he was "hanging out flashing [his] money" in a nearby parking lot and denied drinking that night. He said that he had known the Defendant and his brother for about fifteen years, that they were friends, and that he did not tell the police initially who shot him because of their friendship. He said that after the Defendant was released on bond, the Defendant drove past his home displaying a gun and followed him. He said an order of protection was pending at the time of sentencing.

On cross-examination, the victim testified that he, the Defendant, and the Defendant's brother struggled on the Defendant's property and that he put his hand on the Defendant's throat. He said he saw the Defendant driving by his house three times. He agreed he had a previous criminal history of theft and burglary.

The Defendant testified that he did not drive by the victim's house displaying a gun and that he did not know where the victim lived. He agreed he sought an order of protection against the victim because the victim fired a gun into his car. He said he and a friend were traveling in his car when the victim's car approached from the opposite direction. He said the victim and the men inside the car displayed their gang signs and shot at the Defendant's car. He denied threatening the victim and said he was served with the victim's order of protection. He said that he was not a threat to the victim and that he acted in self-defense the night of the shooting. He said the victim choked him for about three or four minutes. He said that he worked for the family landscaping business and that he could pay his court costs and perform community service.

Upon examination by the trial court, the Defendant testified that no problems existed between his and the victim's families but that the victim was angry and created problems for the Defendant. The court stated that it did not know who to believe because the victim and the Defendant claimed the same thing.

The trial court denied the Defendant's request for judicial diversion and sentenced him as a Range I, standard offender to two years' probation. The court stated that the Defendant raised strong mitigation regarding his acting under provocation but that the victim's version of events was credible despite his criminal history. The court found that the Defendant expressed remorse for his actions and the injuries he inflicted upon the victim. The court found that the Defendant took responsibility for his actions and had previously cared for an elderly relative. It found that based on the trial testimony, the evidence showed that the victim was the initial aggressor.

The trial court found that the Defendant was charged with criminal offenses previously and that he had "some criminal history." *See* T.C.A. § 40-35-113(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to

those necessary to establish the appropriate range"). The court found that the Defendant was arrested previously for unlawful possession of drug paraphernalia, evading arrest, driving on a revoked license, and violating the requirement to renew a motor vehicle license. We note that the presentence report showed that the State chose not to prosecute these charges. The court found that the Defendant was previously convicted of violating the driver's license law and that his criminal history removed him from the especially mitigated offender classification.

The trial court denied judicial diversion. It found that the Defendant was amenable to correction, although it was a "tough call" because the Defendant and the victim each claimed the other was driving by his house displaying a gun. The court noted they denied the allegations. The court found that the victim's injuries were "horrible," that the Defendant had a previous conviction for violating the driver's license law, and that he had a good social history, physical health, and mental health.

The court stated that its difficulty in determining the Defendant's sentence was that the jury acquitted him of multiple charges involving robbery. The court noted that the difficult question was whether the Defendant overreacted to a "scuffle or attack." The court found no evidence that judicial diversion would serve the Defendant's and the public's interests. It found that the public would have difficulty understanding why a defendant, who shot and paralyzed someone, received diversion. The court found that the victim's allegation that the Defendant drove by his house displaying a gun was credible but that a police report showed a bullet hole in the Defendant's car. The court denied judicial diversion based on all the evidence, sentenced him to two years' probation, and prohibited him from contacting the victim. This appeal followed.

# I

The Defendant contends that the trial court erred by classifying him as a standard offender. He argues that he was an especially mitigated offender and that the court abused its discretion by using his conviction for violating the driver's license law as a basis to classify him as a standard offender. The State responds that the court exercised proper discretion in sentencing the Defendant as a standard offender. We agree with the State.

The decision whether to sentence a defendant as an especially mitigated offender "is a question which rests within the sound discretion of the trial court." *State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993) (citing *State v. Buttrey*, 756 S.W.2d 718, 722 (Tenn. Crim. App. 1988)). A court may sentence a defendant as an especially mitigated offender if "the defendant has no prior felony convictions" and "the court finds mitigating, but no enhancement factors." T.C.A. § 40-35-109(a) (2010). "A trial court designates a

defendant as especially mitigated offender only where the judge desires 'to depart from even the minimum sentence for a Range I offender and impose lesser penalties.'" *State v. Julio Ramirez*, No. M2009-01617-CCA-R3-CD, slip op. 33 (Tenn. Crim. App. June 8, 2011) (quoting T.C.A. § 40-35-109 Sentencing Comm'n Cmts.), *perm. app. denied* (Tenn. Sept. 21, 2011).

As a preliminary matter, the Defendant asserts that the State failed to carry its burden in establishing the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range because the State failed to file notice of enhancement factors before the sentencing hearing and failed to present a judgment of conviction establishing the Defendant's previous conviction for violating the driver's license law, a Class C misdemeanor. This court has concluded that our sentencing statute does not require the State to file a notice of enhancement factors and that it is within the trial court's discretion to require the State to file a notice. *Cf. State v. Adams*, 788 S.W.2d 557 (Tenn. 1990); *see State v. Bobby Joe Strader*, No. 03C01-9812-CR-00425 (Tenn. Crim. App. Nov. 10, 1999), *State v. Robert Lee Norris*, No. 01C01-9603-CC-00088, slip op. at 5 (Tenn. Crim. App. Jan. 30, 1997), *perm. app. denied* (Tenn. June 30, 1997) (citing T.C.A. § 40-35-202(b)(1). We note that enhancement and mitigating factors are used by the trial court in determining the specific sentence within an already determined range and do not impact the sentencing range, which is addressed in Code sections 40-35-106 through 40-35-109. *Adams*, 788 S.W.2d at 559. Although the State did not file a notice of enhancement factors, the trial court did not require it.

With regard to the State's failure to present a certified copy of the judgment of conviction, this court has refused to conclude that "the legislature contemplated that the trial court must exclude from the evidence or refuse to consider information about prior convictions solely because it is only contained in the presentence report." *State v. Carlos Radale Cornwell*, No. E2011-00248-CCA-R3-CD, slip op. at 35 (Tenn. Crim. App. Oct. 25, 2012) (quoting *State v. Richard J. Crossman*, No. 01C01-9311-CR-00934 (Tenn. Crim. App. Oct. 6, 1994) (internal citations omitted)). A presentence report must be prepared, and the trial court must consider it in determining the appropriate sentence. *Id.* The presentence report showed the Defendant's previous conviction for violating the driver's license law. The Defendant does not contest the existence of the conviction, only that the State failed to prove its existence with extrinsic evidence.

We conclude that the trial court did not abuse its discretion by sentencing the Defendant as a Range I, standard offender. The Defendant had a previous conviction for violating the driver's license law. Although the Defendant had only one minor conviction, application of enhancement factor (1) is not limited to felony convictions. *See State v.*

*Millbrooks*, 819 S.W.2d 441, 446-47 (Tenn. Crim. App. 1991). The conviction was relevant for determining whether the Defendant was an especially mitigated offender.

## II

The Defendant contends that the trial court erred by denying him judicial diversion. He argues that the court erred by focusing on the deterrence value and gave insufficient weight to the relevant factors in determining whether to grant diversion. The State responds that the court properly denied judicial diversion. We agree with the State.

A defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(I) (2010). The decision to grant judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting *State v. Hammersley*, 650 S.W.2d 353, 356 (Tenn. 1983)).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. *Electroplating*, 990 S.W.2d at 229; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. Appellate review is precluded if the trial court fails to make findings in support of its determination regarding judicial diversion. *See State v. Kevin Spurling*, No. E2008-02599-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App. Feb. 8, 2010).

At the trial, the victim testified that on June 15, 2010, he visited the Defendant's house, that they went to a dance club that night with a group of people, and that he, the Defendant, and the Defendant's brother returned to the Defendant's house. The victim had about $300 in his pants pocket and "flashed it around" for other people to see it. When the victim decided to go home, the Defendant stood up and blocked him from leaving. The Defendant reached into the victim's pants pocket and said, "Let me get that." The

Defendant's brother approached the victim from behind and reached into his pants pockets. The victim and the Defendant fought, and the victim choked the Defendant for about three or four seconds in an attempt to get away. The Defendant's brother came out of the house with a .357 revolver and pointed it at the victim, who denied bringing a gun to the Defendant's home. The Defendant took the gun from his brother, the victim fled, and the Defendant fired the gun five or six times. The victim was shot in the back and fell to the ground. The Defendant stood over the victim, took the victim's phone, and told the victim that he would kill him if the victim told the police. The Defendant was paralyzed permanently as a result of his injuries.

The victim initially lied to the police about how he was shot because the Defendant and his brother were his friends and because he did not want them to go to jail. The victim had previous convictions for various types of burglary but denied breaking into the Defendant's home. The victim said the Defendant's brother took his wallet when he was on the porch. The victim agreed that he testified at the preliminary hearing that he did not know who took his wallet.

Memphis Police Sergeant Webb Kirkdoffer interviewed the victim, who told him that the victim was outside the Defendant's house looking at his new cell phone, that the Defendant's brother went inside the home and returned with a gun, and that the Defendant's brother asked for the victim's money. The victim attempted to prevent the Defendant's obtaining the gun, and they fought. The victim ran and was shot in the back. The victim originally denied knowing who shot him and later identified a man named Muff, who drove a black Nissan with a Mississippi license plate, as being involved in the shooting.

Victoria Hill, the Defendant's cousin, lived with the Defendant and the Defendant's brother. She awoke to people arguing outside, and she woke her grandmother, who woke the Defendant. The Defendant went outside. She saw the victim choking the Defendant for about three minutes and a gun fall from the victim's front pants pocket. The Defendant picked up the gun. The victim ran, and the Defendant fired the gun.

Kevin Jones said that the victim attacked the Defendant and that the Defendant did not have a gun. He saw the victim choke the Defendant and the Defendant's brother attempt to stop the fight. The gun fell to the ground. The victim ran, and the Defendant picked up the gun and fired it.

James Jones drove a black Nissan Maxima at the time of the shooting and was working the night of the shooting. Lester Hudson, the Defendant's cousin, said the victim asked Mr. Hudson to pay for his medical treatment in exchange for his not testifying against the Defendant and his brother.

The Defendant woke to the victim's yelling that someone had the victim's wallet and to the victim's threatening the Defendant. They searched for the victim's wallet but did not find it, and the Defendant returned to bed. He woke again to the victim's beating the house's windows and went outside. The victim "rushed" him and choked him for about three or four minutes, and he could not breathe. The victim's gun fell to the ground, and the Defendant picked up and fired the gun at the fleeing victim.

At the sentencing hearing, the trial court found that the Defendant had a good social history, physical health, and mental health but had difficulty assessing whether the Defendant was amenable to correction. The court said that although the Defendant appeared to be amenable to correction, it was a "tough call" because the Defendant and the victim claimed the other was driving by the other's house displaying a gun. The court found that the victim was credible regarding his claim that the Defendant drove by his house displaying a gun. The court found that the Defendant was previously convicted of violating the driver's license law. Regarding the circumstances of the offense, the court found that the victim's injuries were "horrible." The court found no reason showing that judicial diversion served the Defendant's and the public's interests. It was concerned that the public would have difficulty understanding why a defendant, who shot and paralyzed someone, received diversion. We conclude that the court did not abuse its discretion and that it considered and weighed all the relevant factors in denying diversion. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE