IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2015

## STATE OF TENNESSEE v. SHELTON POPE

**Appeal from the Criminal Court for Shelby County**
**No. 13-04615     J. Robert Carter, Jr., Judge**

_____

**No. W2014-01057-CCA-R3-CD  -  Filed June 16, 2015**

_____

The defendant, Shelton Pope, appeals his Shelby County Criminal Court jury conviction of theft of property valued at more than $500 but less than $1,000.  On appeal, the defendant claims that the trial court erroneously denied his motion for a mistrial in response to the jury's being exposed to improper influence and that the evidence is insufficient to support the conviction.  Following our review, we affirm the judgment of the criminal court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Phyllis Aluko (on appeal) and Alicia Kutch (at trial), Assistant District Public Defenders, for the appellant, Shelton Pope.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was originally charged with theft of property valued at $1,000 or more but less than $10,000, a Class D felony.  *See* T.C.A. §§ 39-14-103(a), -105(a)(3).  The jury convicted him of the lesser included offense of theft of property valued at more than $500 but less than $1,000, a Class E felony.  *See id.* § 39-14-105(a)(2).  The trial court sentenced the defendant to serve six years in the workhouse as a career offender.  Following the denial of the defendant's timely motion for new trial, he filed a timely notice of appeal.

At trial, Mark Bassett, the victim, testified that his 1995 green Toyota 4Runner truck was stolen on March 9, 2013. The victim testified that on that date the truck had an electrical problem; sometimes it would not start. On March 9, he drove the truck to a Kroger store, and thinking his visit inside the store would be brief and being unsure whether he could restart the truck if he turned off the ignition, he left the motor running and the door unlocked. He was in the store 15 to 20 minutes, and while standing in the checkout line, he noticed the truck was gone and called the police. After police officers arrived, the victim gave the truck's description and license number and his insurance information to Officer Smith. The victim testified that his cellular telephone was inside the truck.

The victim testified that he heard on April 8, 2013, that the truck had been found. Upon retrieving the truck, the victim found it to be in "awful," "disgusting" condition. The truck contained a man's soiled clothing, "drug paraphernalia," and a small "baggie" that contained a "rock type substance." He also found a job application bearing the defendant's name. The victim did not recover his telephone.

The victim testified that the value of the truck at the time of the theft was $1,200 to $1,300 and that he had recently invested about $1,500 making repairs and installing new tires, a new battery, and a new starter.

Gregory Manning testified that he and his wife went to the Kroger store on March 9, 2013, and parked directly behind the victim's truck. Mr. Manning remained in his car while his wife went into the store. When the victim came out of the store with groceries in hand and started looking around, Mr. Manning asked whether there was a problem. The victim said his truck was missing, and Mr. Manning let the victim use Mr. Manning's telephone to call the police. Mr. Manning said he saw the victim's truck being driven away by a "black guy."

On cross-examination, Mr. Manning testified that the victim's truck and his own car had been parked "behind each other" with a drive lane separating them. He said he noticed the truck's driver because the truck nearly hit Mr. Manning's vehicle as it was quickly backing out of the parking space.

Memphis Police Department ("MPD") Officer Reginald Smith testified that he answered a call to go to the Kroger on March 9, 2013, to investigate a complaint about a stolen truck and that he entered the information on the truck into the department's stolen vehicle database. MPD Officer Timothy Shaw testified that at approximately 11:50 p.m. on April 6, 2013, he saw a Toyota 4Runner parked at Rodney Baber Park, which was closed at that hour. Officer Shaw "ran the plates" and learned that the Toyota was stolen and that the owner was not the defendant, who was sitting in the driver's seat.

-2-

A woman sat in the passenger seat.

Inside the Toyota truck, the officer found clothing, papers bearing the defendant's name, and a "crack pipe." The defendant told the officer that the clothing in the truck was his. The officer had the truck towed to the city impound lot. On cross-examination, Officer Shaw testified that the defendant made no attempt to flee or resist arrest.

Angela Thomas testified that she was arrested along with the defendant at a park in April 2013. Ms. Thomas and the defendant were in a green truck. She said that she told an officer at the time that she had seen the defendant driving that truck the week before.

The defendant presented no proof in the trial. The jury convicted him of theft, albeit at a grade less than that charged.

In the defendant's first appellate issue, he claims that the trial court erred by failing to order a mistrial based upon the jury's being exposed to extraneous information.

During its deliberation, the jury posed a question to the trial court: "If we cannot conclude on value, what happens?" The court did not respond immediately but adjourned trial proceedings for the day and sent the unsequestered jurors home. When court opened the following morning and with the jury absent from the courtroom, the trial judge and counsel discussed the possibility that some jurors may have used extraneous information to help the jury determine the value of the stolen truck. The judge brought in the jury and instructed them not to consult or use information outside the evidence presented in the case. The jurors indicated their assent to this instruction.

The jury was excused, and the trial judge then placed on the record the events that had prompted the new instruction. He indicated that a juror had communicated to court personnel that one or more of the jurors "might have used their cell phones and already checked the internet or Googled the Kelley blue book value of the vehicle in question."

When the court announced that the jury was ready to return with a verdict, the defendant then moved for a mistrial based upon the jury's exposure to extraneous information. The trial court denied the motion.

The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court, and this court will disturb the trial court's ruling in this regard only when there has been an abuse of the trial court's discretion. *State v. Nash*, 294 S.W.3d

541, 546 (Tenn. 2009). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003) (citing *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *Saylor*, 117 S.W.3d at 250 (quoting *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The burden of establishing the necessity for mistrial lies with the party seeking it. *Id.*

In the present case, the motion for a mistrial was founded upon the claim that members of the jury acquired non-evidentiary information to use in resolving the issues on trial. Our supreme court has recently addressed this issue:

> When a trial court learns that an extra-judicial communication between a juror and a third-party has occurred, the court must take steps to assure that the juror has not been exposed to extraneous information or has not been improperly influenced. In most circumstances, the appropriate first step is to conduct a hearing in open court in the presence of the defendant to place the facts in the record and to determine on the record whether cause exists to find that the juror should be disqualified. As the Court of Appeals has noted, when misconduct involving a juror is brought to a trial court's attention, "it [is] well within [the judge's] power and authority to launch a full scale investigation by summoning . . . all the affiants and other members of the jury, if need be, with a view of getting to the bottom of the matter, and this, if necessary, upon [the judge's] own motion."

> Because of the potentially prejudicial effect of a juror's receipt of extraneous information, the State bears the burden in criminal cases either to explain the conduct of the juror or the third party or to demonstrate how the conduct was harmless. Error is harmless when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

> When a jury is not sequestered, something more than a showing of an extra-judicial communication between a juror

-4-

and a third party is required to shift the burden to the State. There must also be evidence that, as a result of the extra-judicial communication, some extraneous prejudicial fact or opinion "was imported to one or more jurors or some outside improper influence was brought to bear on one or more jurors." Thus, when it is shown that a juror has been exposed to extraneous prejudicial information or an improper influence, a rebuttable presumption arises and the burden shifts to the State to explain the conduct or demonstrate that it was harmless.

*State v. Smith*, 418 S.W.3d 38, 46 (Tenn. 2013) (citations and footnote omitted).

"A party challenging the validity of a verdict must produce admissible evidence to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *State v. Adams*, 405 S.W.3d 641, 651 (Tenn. 2013). Tennessee Rule of Evidence 606(b) allows a juror to be called to testify "on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, [or] whether any outside influence was improperly brought to bear upon any juror." Tenn. R. Evid. 606(b).

In the case before us, the defendant did not utilize the mechanism afforded by Rule 606(b) to establish through admissible evidence that an exposure to extraneous information actually occurred. That burden lay with him, and because he did not shoulder this burden, the State was never obliged "to explain the conduct or demonstrate that it was harmless." *See Smith*, 418 S.W.3d at 46.

In passing, we are aware that, even if the defendant had shown an impermissible interjection of extraneous information as alleged, the circumstances indicate that an exposure to the information was harmless beyond a reasonable doubt. *See id.* The allegation was that the information related to the value of the stolen vehicle. The only value evidence presented at trial was the victim's testimony that the vehicle was worth $1,200 to $1,300. For whatever reason, the jury placed the value at an amount less than $1,000 and, in so doing, lessened the grade of the felony offense from Class D to Class E. Certainly, no outside information that may have been imparted to the jury caused them to accept the victim's testimony; indeed, if any such imparting occurred, it likely accounts for the diminution in value to the defendant's benefit. Under these circumstances, any error appears to be harmless beyond a reasonable doubt.

In the defendant's other issue on appeal, he challenges the sufficiency of the convicting evidence. We review the defendant's claim mindful that our standard of

review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654. "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft is graded by the value of the property taken. The theft of property valued at more than $500 but less than $1,000 is a Class E felony. *Id.* § 39-14-105(a)(2).

The defendant's attack upon the sufficiency of the evidence is based upon his claim that the State failed to prove his identity as the thief. We disagree. In the light most favorable to the State, the evidence showed that a man matching the defendant's ethnic derivation took the victim's truck which the victim had left unlocked with the engine running and hurriedly departed the Kroger parking lot. The defendant was seen driving the truck less than three weeks after the theft, and when the police officer found the truck slightly less than a month after the theft, the defendant was in the driver's seat. Inside the truck, officers found clothing that the defendant admitted to owning, and they found a job application form bearing the defendant's name. Upon these facts, the jury's inference that the defendant stole the truck was reasonable. Thus, the evidence was sufficient to convict the defendant of theft.

In conclusion, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE