IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

September 6, 2017 Session

**STATE OF TENNESSEE v. TIMOTHY MCKINNEY**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03457      James C. Beasley, Jr., Judge**

_____

**No. W2016-00834-CCA-R3-CD**

_____

The defendant, Timothy McKinney, appeals his convictions for one count of attempted murder in the second degree, one count of employing a firearm during the commission of attempted murder in the second degree, two counts of reckless endangerment with a deadly weapon, and three counts of being a convicted felon in possession of a firearm, for which he received an enhanced sentence of life in prison without possibility of parole as a repeat violent offender. On appeal, the defendant contends the trial court abused its discretion when allowing improper impeachment questions during the cross-examination of the defendant; the trial court erred when failing to declare a mistrial; the State tainted the trial with improper statements made during closing arguments; the trial court erred when sentencing the defendant to life in prison as a violent offender; and the cumulative effect of these errors prejudiced the defendant and entitle him to a new trial. Following our consideration of the arguments of the parties, record, briefs, and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J. concurred in results only. THOMAS T. WOODALL, P.J., filed a dissenting opinion.

John R. McCabe, Memphis, Tennessee, for the appellant, Timothy McKinney.

Herbert H. Slatery III, Attorney General and Reporter; Caitlyn Smith, Assistant Attorney General; Amy Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This case arises as the result of a shooting that occurred around 4:00 p.m. on January 23, 2014. A few days prior, the defendant was outside North Memphis Market when three men attempted to rob him at gunpoint. The defendant fled and, despite a criminal history that included three felony convictions for crimes of violence against people and knowledge these convictions precluded him from owning a firearm, purchased a gun from someone in the neighborhood. According to the defendant, the gun was necessary for protection.

When the defendant approached the North Memphis Market on January 23, 2014, he recognized a man wearing a white hat. Once inside the store, the defendant confronted the man and accused him of being one of the men who attempted to rob him a few days earlier. The man in the white hat denied involvement, and the defendant saw him reach for his weapon. The defendant then pulled his gun and fired two shots, accidentally shooting Wayna Phillips, the fourteen year old victim, in the leg. The man in the white hat fired back, and both men fled the scene on foot. The victim crawled to an aisle in the store and waited for help to arrive.

Renardo Hibbler, a cook at the North Memphis Market, was working at the time of the shooting. He initially thought the shots were firecrackers and moved to the back of the store to prepare chicken. While in the back, Mr. Hibbler heard a second round of shots, peeked into the store, and saw a black male exiting the building. Mr. Hibbler yelled, asking whether anyone had been hurt, and learned the victim had been shot in the leg. Mr. Hibbler reported the shooting and injury to "911."

Javier McKissick was also working at the North Memphis Market during the shooting on January 23. Mr. McKissick had seen the defendant and the other men fighting outside the store a few days before and the day of the shooting noticed the defendant and one of the other men from the fight looking at each other from opposite ends of the store. Based on their body language, he knew something was about to happen. The men exchanged words, separated, and began shooting at one another. The defendant pulled his gun first and fired the first shot.

Following the shooting, an ambulance arrived and transported the victim to LeBonheur Children's Hospital, where he remained for two days. While in the hospital, the victim underwent surgery for a broken thigh bone and was diagnosed with nerve damage. At the time of trial, the victim continued to have sharp pain in his leg as a result of the nerve damage.

Officer John Hawkins with the Memphis Police Department ("MPD") was the first officer to respond to the emergency call and approximately five officers followed. When Officer Hawkins arrived, the victim had already been transported to the hospital, so he

spoke with the victim's mother. The victim's mother was hysterical and indicated her son sustained a gunshot wound to the leg. After talking to additional witnesses, Officer Hawkins determined there were at least two suspects, one of whom was named "Tim." He never learned the identity of the second suspect.

Officers Russell Woolley, Dresseas Fox, and Hope Smith also responded to the scene. Officer Smith took photographs of the building, tagged evidence, sketched the scene, and collected five bullet casings. Agent Eric Warren with the Tennessee Bureau of Investigation ("TBI") identified the casings as .380 caliber bullet casings and opined the bullets had been fired from two separate guns – two bullets from one gun and three bullets from the other. As part of their investigation, Officers Woolley and Fox spoke with witnesses and in the days that followed made several unsuccessful attempts to locate the defendant at two addresses obtained for him. Officers Woolley and Fox also met with Mr. McKissick in his home. Mr. McKissick is deaf, but the officers were able to communicate with him in writing and through his sister, who knew sign language. Mr. McKissick later went to the police station and gave an official statement with the aid of a sign language interpreter.

Officers Thomas Parker and James Fort assisted with the collection and processing of video evidence. Officer Parker retrieved the surveillance video from the North Memphis Market and converted footage of the incident into a format that could be played for the jury. Officer Fort captured still photos of the incident from the surveillance video. Mr. McKissick identified the defendant in both surveillance video and still shots.

Following the shooting, police officers spent days searching the area and speaking with neighbors regarding the defendant's whereabouts. The defendant learned the police were looking for him and, after speaking with his attorney, turned himself in to authorities.

The State rested after calling the victim, Officer Hawkins, Officer Fox, Officer Parker, Officer Fort, Officer Smith, Mr. Hibbler, Agent Warrant, Officer Chappell, Mr. McKissick, and Officer Woolley to testify. Following a *Momon* hearing, the defendant testified on his own behalf. The defendant stated that following the altercation with the man in the white hat and two others outside the market, he was in fear for his life. As a result, despite knowledge he was not to own a firearm due to his three prior felony convictions involving violence and a conviction of aggravated robbery at gunpoint, the defendant bought a gun. According to the defendant, he only drew his weapon and fired after the man reached for his gun. The defendant fired two shots. The victim was standing in the checkout line at the time, and the defendant did not intend to shoot him.

Prior to trial, the trial court granted a limine motion precluding reference to the defendant's prior conviction for murdering an off-duty police officer. During the cross-examination of the defendant, however, the following exchange occurred:

[State]: Did you tell anybody prior to going to jail that you had killed the police before you went to jail?

[Defendant]: No, ma'am.

Defense counsel objected, arguing the question was prejudicial, and moved for a mistrial. During a bench conference outside the presence of the jury, the State clarified its question, stating it intended to ask the defendant, "If he had told anyone that he would kill the police before he went to jail. It is what is on that flyer. It was passed out and it is what was told to the officers." The flyer referenced by the State was never introduced into evidence at trial, but had been used by the MPD when attempting to locate the defendant following the shooting. The flyer included a picture of the defendant along with a warning that he told family members he would kill a police officer before going to jail. The trial court overruled the objection and denied the motion for a mistrial, finding the statement relevant to the credibility of the defendant's assertion he fired his gun in self-defense. Once the trial resumed, the State moved on and never continued its questioning of the defendant regarding the flyer.

After the trial court charged the jury, which included an instruction that the statements of counsel are not evidence, the attorneys for the parties delivered closing arguments. During its closing argument, the State addressed adequate provocation, stating:

And you have defined for you what heat of passion is. And you know that it's a standard of what a reasonable person would do with adequate provocation. Not what he did or thought. What a reasonable person would think. And each one of you have common sense and reason or you wouldn't be here.

Ladies and Gentlemen, I give you an example of a hypothetical because some people would say that a case where that would apply would be a situation where a person walks in and finds their spouse in bed with someone else. Some people would say that would be adequate provocation. But that's not what he did.

Some people might say that if a person or a child was raped that would be adequate provocation. But that's not what this is. This is him not

liking the fact that the white hat guy was with the guy that actually maybe robbed him or said something to him a few days prior. This is him going afterwards to settle his score. This is him upset with somebody who was just minding their own business with their back to him when he walks in the door.

By his testimony he acted out of instinct. By his testimony I'm familiar with my reflex. And Ladies and Gentleman, if that was what a reasonable person thought to be adequate provocation; if that was reasonable provocation then our streets would be littered with dead bodies.

The defendant objected, and following a bench conference, the trial court found the hypotheticals of adequate provocation improper, as was the statement regarding "our streets would be littered with dead bodies." The trial court then gave this curative instruction:

Ladies and Gentleman, let me just remind you, your job is to try this case based on the facts that are presented in this case. And that's the only thing that you are to consider. It doesn't go beyond the realm of this case.

It's going [to] be your decision to determine what is adequate provocation if that's a question you have. That's a decision you must make. And that's a jury's decision and that's not the lawyer's and examples of what may or may not be. It's up to you to decide what is or is not adequate provocation.

Later during its closing argument, the State commented, "Had Wayna Philips died this wouldn't be an attempt. He had an intent; he took a substantial step; he hit the wrong person." The defendant objected, stating, "That's not the law." The trial court agreed and stated, "That's a question of fact for the jury to determine whether or not if Mr. Phillips had died it would have been first degree murder. That's part of the argument, but that's – I'll give you the law. What I tell you is the law that's applicable."

During its rebuttal closing, without objection from the defendant, the State offered this colloquy that the defendant now contends was improper:

So I ask you very quickly who has a motive to lie to you? Who benefits if you believe the lies? Is it Wanya Phillips? No matter what decision you make today Wanya Phillips is – his life is changed forever. Whatever you do can't fix the horrible injury that Wanya suffered in the convenience store in the middle of the day. Can't fix it. Didn't know those

people before. Hadn't seen them since. Never been in that market before. He has no reason to lie to you.

Does Renardo Hibbler? No. Does Javier McKissick? No. Do the police officers that worked this case have any motive to lie to you? They absolutely do not. They worked hard to get to the truth, Ladies and Gentlemen. But the truth was not self-defense. The truth was not self-defense.

Later in its rebuttal closing, the State stated, "The defendant did employ a firearm and he has been three times convicted of felonies involving violence to people." The defendant objected, arguing the State made this statement to show the defendant's propensity towards violence, so the trial court offered this curative instruction to the jury:

Ladies and Gentlemen, again, and I think I expressed it in my instructions, but with regard to any testimony regarding prior convictions of either offenses it's only applicable to particular counts of an indictment.

You can't use it as propensity to show that he acts in a certain way because of prior convictions. It's relevant as to credibility . . . It's relevant as to certain counts of the indictment in another incident. That's what you're to use it for."

After listening to closing arguments and deliberating, the jury found the defendant guilty of the following: Count 1, attempted murder in the second degree; Count 2, employment of a firearm during the commission of an attempted murder in the second degree; Counts 3 and 4, reckless endangerment with a deadly weapon; and Counts 5 through 7, of being a convicted felon in possession of a firearm having been convicted of felonies involving the use or attempted use of violence. As the thirteenth juror, the trial court concurred with all findings.

The trial court then commenced a second phase of trial for determination as to whether the defendant had a prior conviction for attempted murder in the second degree. The State entered a certified copy of the defendant's prior conviction for the offense and called Norma Henry, an employee with the Shelby County Criminal Court Clerk's Office, to explain the document. Following brief deliberations, the jury found the defendant did indeed have a prior conviction for attempted murder in the second degree, and trial court again concurred with the jury's findings.

The trial court subsequently held a sentencing hearing during which the State presented certified copies of the defendant's prior convictions for aggravated robbery,

second degree murder, and attempted second degree murder, making the defendant subject to the enhanced sentencing requirements for repeat violent offenders found in Tennessee Code Annotated section 40-35-120.  In addition, the State presented evidence that the defendant's criminal history included offenses committed as a juvenile that would have been felonies had he committed them as an adult.  After considering the requirements of Tennessee Code Annotated section 40-35-120, the statutory purposes of sentencing, and the enhancement factors presented by the State, the trial court merged Counts 6 and 7 into Count 5 and imposed an effective sentence of life in imprisonment without parole plus ten years to be served at 100%.

The defendant subsequently filed a motion for a new trial and two amended motions for a new trial in which he argued:  the evidence was insufficient to sustain the verdicts; the trial court erroneously denied the defendant's objection to the State's mischaracterization of evidence during its redirect of the victim; the State violated discovery by failing to produce a flyer utilized by the MPD when searching for the defendant in advance of trial; the State tainted the trial through prosecutorial misconduct when cross-examining the defendant regarding his alleged statement that he would kill a police officer before returning to jail; the trial court erred by failing to declare a mistrial following the aforementioned cross-examination of the defendant; the trial was tainted by improper statements during closing arguments; the trial court erroneously instructed the jury; and the Shelby County District Attorney's office engaged in vindictive prosecution. The trial court denied the motion, and this timely appeal followed.

*Analysis*

## I.   Impeachment of the Defendant

On appeal, the defendant first argues the trial court erred by permitting the State to impeach him by asking whether he told anyone he would kill a police officer before going to jail.  The State asserts the trial court properly permitted the question, and any errors surrounding the procedure used when considering the evidence were harmless.  We agree with the State.

"Decisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion.  Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion."  *State v. Banks,* 271 S.W.3d 90, 116 (Tenn. 2008) (citing *State v. Robinson,* 146 S.W.3d 469, 490 (Tenn. 2004)).  Moreover, "an evidentiary ruling ordinarily does not rise to the level of a constitutional violation." *State v. Powers,* 101 S.W.3d 383, 397 (Tenn. 2003) (citing *Crane v. Kentucky,* 476 U.S. 683, 689 (1986)).

The defendant first argues the trial court violated Rule 609 of the Tennessee Rules of Evidence and interpreting case law when allowing the State to question the defendant about his alleged statement concerning killing police officers. Rule 609 addresses impeachment by evidence of a prior criminal conviction and is inapplicable to the situation at hand. The State did not attempt to impeach the defendant with his prior conviction for second degree murder. The jury never learned of this conviction and did not know the defendant had previously shot and killed an off-duty police officer. The defendant's argument that the trial court erred under Rule 609 and interpreting case law when allowing the State's question is without merit.

The defendant goes on to argue the cross-examination of the defendant was also improper under Rule 608(b). Rule 608(b) of the Tennessee Rules of Evidence addresses the admissibility of specific instances of conduct for the purpose of attacking or supporting a witness's character for truthfulness and sets forth a specific procedure which must be followed when attempting to impeach a witness with such evidence. Tenn. R. Evid. 608(b). The procedure is even more rigorous when the witness being cross-examined is the accused in a criminal proceeding. Tenn. R. Evid. 608(b)(3). Rule 608(b) provides:

> **(b) Specific Instances of Conduct.** Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
>
> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;
>
> (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, but evidence of a specific instance of conduct not qualifying under this paragraph (2) is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of

justice that the probative value of that evidence, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the witness's privilege against self-incrimination when examined with respect to matters which relate only to character for truthfulness.

Tenn. R. Evid. 608(b).

During the cross-examination of the defendant, the State asked, "Did you tell anybody prior to going to jail that you had killed the police before you went to jail?" In response, the defendant answered, "No, ma'am." At that point, the defendant asked for a bench conference, and the trial court granted the request. The trial court expressed confusion over the question, so the State clarified it intended to ask the defendant "If he had told anyone that he would kill the police before he went to jail. It is what is on that flyer. It was passed out and it is what was told to the officers." The defendant argued the question was prejudicial, and he was not given adequate pretrial notice of the flyer bearing the statement. The defendant then moved for a mistrial. The trial court noted the jury was not aware the defendant previously shot and killed an off-duty police officer, resulting in a conviction for second degree murder, and allowed the question, finding it went to the credibility of the defendant's self-defense defense. The trial court additionally denied the defendant's request for a mistrial. The State then proceeded with its cross-examination of the defendant without ever rephrasing the question or asking about the statement on the flyer again.

The questions of counsel are not evidence. *See State v. Antonio Morrow*, No. 02CO1-9709-CR-00358, 1998 WL 351223, at *3 (Tenn. Crim. App. July 2, 1998) (noting "it is fundamental that attorney's questions, comments, and arguments are not evidence"). The defendant answered, "No, ma'am," when the prosecutor asked, "Did you tell anybody prior to going to jail that you had killed the police before you went to

- 9 -

jail?" The jury consequently never heard any evidence regarding the statement contained on the flyer. Moreover, when charging the jury, the trial court included the following instruction: "Statements, arguments and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements were made that you believe are not supported by the evidence, you should disregard them." We presume the jurors followed this instruction. *See State v. Butler*, 800 S.W.2d 395,399 (Tenn. Crim. App. 1994) (concluding it is presumed jurors follow the instructions of the trial court).

When the defendant denied telling anyone he had previously shot a police officer, there was no evidence of a specific act of conduct with which to impeach the defendant. Moreover, given the overwhelming evidence of the defendant's guilt, any error in complying with the procedural mandates of Rule 608(b) were harmless. *See* Tenn. R. App. P. 36(b). The defendant is not entitled to relief on this issue.

## II.    Failure to Grant Mistrial

The defendant next argues the trial court erred when denying his request for a mistrial after the State asked the defendant, "Did you tell anybody prior to going to jail that you had killed the police before you went to jail?" The State asserts the trial court properly denied the request. We agree.

Courts should only declare a mistrial in a criminal matter when required by manifest necessity. *State v. Millbrooks,* 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). A mistrial is an appropriate remedy when the trial cannot continue or a miscarriage of justice would result if it did. *State v. McPherson,* 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial is within the sound discretion of the trial court, and this Court will not interfere absent a clear abuse appearing on the face of the record. *State v. Hall,* 976 S.W.2d 121, 147 (Tenn. 1998). The party seeking the mistrial has the burden of establishing the necessity for it. *State v. Williams,* 929 S.W.2d 385, 388 (Tenn. Crim. App.1996).

The defendant argues the trial court abused its discretion when denying its request for a mistrial because the jury learned of the defendant's prior conviction for second degree murder, thereby causing prejudice, particularly in the absence of curative instructions from the trial judge. When making this argument, the defendant overlooks the fact the jury heard the prosecutor's question without prior knowledge of the defendant's criminal history. The jury did not know the defendant had previously been convicted of second degree murder after shooting and killing an off-duty police officer. Instead, the jury heard the defendant deny telling anyone he had previously killed an officer. At no point during the first phase of trial did the jury ever learn of the

defendant's criminal history. Moreover, as we concluded above, the State presented overwhelming evidence of the defendant's guilt, so any error in allowing the question was harmless. The trial court properly denied the defendant's request for a mistrial, and the defendant is not entitled to relief on this issue.

### III.    The State's Closing Arguments

The defendant next alleges the prosecutor made improper statements during closing arguments, thereby tainting the trial. In response, the State contends its closing arguments did not misstate the evidence or inflame the passions of the jury. Moreover, out of an abundance of caution, the trial court issued limiting instructions, thereby curing any misconduct. Again, we agree with the State.

"Closing arguments serve to sharpen and to clarify the issues that must be resolved in a criminal case" and enable "the opposing lawyers to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *State v. Hawkins*. 519 S.W.3d 1, 47 (Tenn. 2017) (citations and quotations omitted). Because counsel in criminal cases are "'expected to be zealous advocates,'" they are afforded "'great latitude in both the style and the substance of their arguments.'" *Id.* (quoting *State v. Banks*, 271 S.W.3d 90, 130-31 (Tenn. 2008)). Prosecutors, however, "must not lose sight of their duty to seek justice impartially and their obligation 'to see to it that the defendant receives a fair trial.'" *Id.* at 47-48 (quoting *Banks*, 271 S.W.3d at 131). Accordingly, a "prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Banks*, 271 S.W.3d at 131 (citations omitted). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence, or make derogatory remarks or appeal to the jurors' prejudices." *Id.* (citations omitted).

There are five generally recognized areas of prosecutorial misconduct that can occur during closing arguments:

> 1.    It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

> 2.    It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

3.      The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

4.      The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on evidence, by injecting issues broader than guilt or innocence of the accused under the controlling law.

5.      It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

*State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (internal citations omitted). Additionally, the State may not "reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial." *Gann,* 251 S.W.3d at 460. Further, although the State may not comment on the consequences of acquittal, the State "may point out the gravity of a particular crime and emphasize the importance of law enforcement." *Id.* (citing *State v. Dakin,* 614 S.W.2d 812, 815 (Tenn. Crim. App. 1980); *Bowling v. State,* 458 S.W.2d 639, 641 (Tenn. Crim. App. 1970)). The State may base its argument on the evidence presented at trial as well as the reasonable inferences drawn from the evidence. *Banks,* 271 S.W.3d at 131.

In order for the defendant to receive a new trial as a result of comments made during the closing argument, the comments must have prejudiced the defendant's case by affecting the jury's verdict. *State v. Middlebrooks*, 995 S.W.2d 550, 559 (Tenn. 1999). This Court considers the following factors when determining whether this occurred:

1.  The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2.  The curative measures undertaken by the court and the prosecution.

3.  The intent of the prosecutor in making the improper statement.

4.  The cumulative effect of the improper conduct and any other errors in the record.

5.  The relative strength or weakness of the case.

*Judge v. State,* 539 S.W.2d 340, 344 (Tenn. Crim. App.1976).

### A. Statements Regarding Adequate Provocation

The defendant first asserts the State committed prosecutorial misconduct during closing arguments by stating, "[B]y his testimony, he acted out of reflex. By his testimony, 'I'm familiar with my reflex.' And ladies and gentlemen, if that was what a reasonable person thought to be adequate provocation then our streets would be littered with dead bodies." The defendant contends that when making this statement, the State misstated the facts of the case and intended to inflame the jury. After the defendant objected to the statement during trial, however, the trial court offered curative instructions, stating:

> Ladies and Gentlemen, let me just remind you, your job is to try this case based on the facts that are presented in this case. And that's the only thing that you are to consider. It doesn't go beyond the realm of this case. It's going to be your decision to determine what is adequate provocation if that's a question you have. That's a decision you must make. And that's a jury's decision and that's not the lawyers and examples of what may or may not be. It's up to you to decide what is or is not adequate provocation.

Again, jurors are presumed to follow the instructions of the trial court. *Butler*, 800 S.W.2d 399. In light of the trial court's limiting instructions and the overwhelming evidence of the defendant's guilt, the State's arguments regarding adequate provocation were harmless and did not impact the jury's verdict. The defendant is not entitled to relief on this issue.

### B. Statements Regarding the Victim's Death

The defendant next contends the State misstated the law when asserting, "Had Wanya Phillips died this wouldn't be an attempt. He had an intent; he took a substantial step; he hit the wrong person." Following an objection by the defendant, the trial court offered this curative instruction to the jury: "That's a question of fact for the jury to determine whether or not if Mr. Phillips had died it would have been first degree murder. That's part of the argument, but that's – I'll give you the law. What I tell you is the law that's applicable." Additionally, during jury instructions, the trial court advised the jury that statements of counsel are not law. This Court has previously found similar instructions were sufficient to cure any prejudice suffered by the defendant as a result of the misstatements of the State. *See State v. Anita Kay Broughton*, No. E2007-02533-CCA-R3-CD, 2009 WL 648966, *15 (Tenn. Crim. App. June 5, 2009), *perm. app. denied* (Tenn. June 5, 2009) (finding the State's improper reference to a crime the defendant had not been charged with did not prejudice the outcome of the trial where "the jury knew the prosecutor's comments were not evidence and could be disregarded when considering the guilt and innocence of the [d]efendant"). Again, given the strength of the defendant's

case, which included an admission of guilt by the defendant, this statement did not change the outcome of the trial. The defendant is not entitled to relief on this issue.

## C.      Statement Regarding the Veracity of Witnesses

The defendant next argues the State improperly vouched for the credibility of witnesses when stating:

> So I ask you very quickly who has a motive to lie to you? Who benefits if you believe the lies? Is it Wanya Phillips? No matter what decision you make today Wanya Phillips is – his life is changed forever. Whatever you do can't fix the horrible injury that Wanya suffered in the convenience store in the middle of the day. Can't fix it. Didn't know those people before. Hadn't seen them since. Never been in that market before. He has no reason to lie to you.

> Does Renardo Hibbler? No. Does Javier McKissick? No. Do the police officers that worked this case have any motive to lie to you? They absolutely do not. They worked hard to get to the truth, Ladies and Gentlemen. But the truth was not self-defense. The truth was not self-defense.

The defendant failed to object to these statements at trial, so the issue has been waived. *See* Tenn. R. App. P. 36(a) (providing that appellate courts need not grant relief when the objecting party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); *see also State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (stating that a defendant's failure to object to the State's alleged misconduct during closing arguments waives the issue).

Despite the waiver, we could review the issue for plain error. Tenn. R. App. P. 36(b). This Court, however, will not review an issue for plain error unless the following five factors are met:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted). Given the overwhelming evidence of the defendant's guilt, the defendant has not shown

the State's alleged improper arguments adversely affected a substantial right or that consideration of the error is necessary to do substantial justice. The defendant is not entitled to relief on this issue.

### D. Reference to Defendant's Criminal History

Finally, the defendant argues the State committed prosecutorial misconduct by improperly referencing the defendant's criminal history during its rebuttal closing argument. During its rebuttal closing, the prosecutor stated, "The defendant did employ a firearm and he has been three times convicted of felonies involving violence to people." The defendant objected, arguing the State made this statement to show the defendant's propensity towards violence, so the trial court offered this curative instruction to the jury:

> Ladies and Gentlemen, again, and I think I expressed it in my instructions, but with regard to any testimony regarding prior convictions of either offenses, it's only applicable to particular counts of an indictment.

> You can't use it as propensity to show that he acts in a certain way because of prior convictions. It's relevant as to credibility . . . It's relevant as to certain counts of the indictment in another incident. That's what you're to use it for.

The State did not improperly reference the defendant's criminal history during its rebuttal closing argument. Rather, the State's closing was a reiteration of the defendant's testimony. At trial, the defendant admitted to having three prior felony convictions for crimes involving violence to people and acknowledged that because of these convictions, he knew he was not supposed to own a firearm. Moreover, to prevent the jury from improperly using the defendant's testimony regarding his criminal history as propensity evidence, the trial court informed the jury the evidence of the defendant's prior felony convictions was only to be used in conjunction with the charges of being a convicted felon in possession of a firearm. The jurors were presented with overwhelming evidence of the defendant's guilt. In the face of this evidence, even if the State improperly referenced the defendant's prior felony convictions, which it did not, the defendant has not shown the reference affected the outcome of the trial to his detriment. The defendant is not entitled to relief on this issue.

## IV. Sentencing

Next, the defendant contends for the first time on appeal that the trial court erred when sentencing him to life in prison without possibility of parole as a repeat violent offender. The defendant asserts this error constitutes plain error because the State did not

adhere to the notice requirements of Tennessee Code Annotated section 40-35-120(i)(2) by including the dates of his prior incarceration on the statement filed with the trial court. The State asserts no plain error exists and the defendant instead relies on a hyper-technicality that did not result in any prejudice to his defense, so he is not entitled to resentencing. We agree with the State.

The defendant admittedly challenges the sufficiency of the repeat violent offender felony notice for the first time on appeal and attempts to bring it before this Court using the plain error doctrine. Again, this Court will only find plain error exists if the defendant meets the following five criteria:

> (1) [T]he record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial.

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (internal quotations and citations omitted). All five factors must be met in order for this Court to grant plain error relief. *Id*. When it is clear from the record the defendant cannot meet at least one factor, this Court can deny relief without analyzing all five factors. *Id*. The defendant bears the burden of establishing entitlement to plain error relief. *State v. Knowles*, 470 S.W.3d 416, 425 (Tenn. 2015).

Here, the defendant has not shown he is entitled to plain error review because he has not shown the deficiency in the repeat violent offender notice was significant enough to change the outcome of the sentencing hearing. The notice requirement at issue is set forth in Tennessee Code Annotated section 40-35-120(i)(2), which provides:

> The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant, shall set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses. If the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial.

Tenn. Code Ann. § 40-35-120(i)(2). Our supreme court recently offered the following analysis of this notice requirement:

> Notice of enhanced sentencing need not be perfect, but it must be fair. [*State v.*] *Livingston*, 197 S.W.3d [710,] 713 [(Tenn. 2008)]. A notice that fails to provide the defendant with any of the statutorily required relevant information is not fair notice and is insufficient. [*State v.*] *Adams*, 788 S.W.2d [557,] 559 [(Tenn. 1990]. On the other hand, if the content of the State's notice substantially complies with the statutory requirements, "an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id*. ("Where an ambiguity or contradiction appears on the fact of the notice, defendant has a duty to inquire further."). If the notice is filed late but still filed prior to trial, or the notice is timely filed but is in some other way defective, the notice remains effective for purposes of enhanced sentencing, unless the defendant shows prejudice. [*State v.*] *Carter*, 121 S.W.3d [579,] 585 [(Tenn. 2003)].

*State v. Kevin Patterson*, --- S.W.3d ---, 2017 WL 5898397, *7 (Tenn. 2017).

On August 12, 2014, the State filed its notice of repeat violent offender status, which included the following information:

| Date of Conviction | Period of Incarceration | Nature of Incarceration | Court |
|---|---|---|---|
| 5/21/2013 | 15 YEARS | MURDER 2 | CC7 |
| 5/21/2013 | 12 YEARS | CA: MURDER 2 | CC7 |
| 5/11/1994 | 8 YEARS | AGG ROBBERY | CC3 |

The defendant is correct; the notice did not include the dates of the defendant's prior incarceration and instead referenced only the total period of incarceration. The notice, however, contained enough information to sufficiently apprise the defendant of the State's intent to seek an enhanced sentence as a repeat violent offender due to his criminal history. The notice was timely filed, and the defendant had ample opportunity to ask the State for clarification regarding the regarding dates of his incarceration. The State presented certified copies of the records relating to the defendant's prior conviction and incarcerations at the sentencing hearing, and that information was not challenged by the defendant. The defendant has failed to establish that the inclusion of his period of incarceration instead of the actual dates of incarceration on the notice adversely affected a substantial right or changed the outcome of the sentencing hearing, a necessary prerequisite to obtaining plain error review. The defendant waived his challenge of the

trial court's imposition of a life sentence without possibility of parole as a repeat violent offender, and he is not entitled to review of the issue under the plain error doctrine.

## V. **Cumulative Error**

Finally, the defendant contends the cumulative effect of the errors at trial entitled him to a new trial. Pursuant to the cumulative error doctrine, "there may be multiple errors committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings that is so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). The defendant has not shown multiple errors occurred during the course of his trial, so he is not entitled to a new trial.

### *Conclusion*

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE