IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## WILLIAM SCOTT HUNLEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County
No. C-20-35  Roy B. Morgan, Jr., Judge**

_____

## No. W2020-01695-CCA-R3-PC

_____

The petitioner, William Scott Hunley, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. Ross Dyer, J., delivered the opinion of the court, in which Robert W. Wedemeyer and Camille R. McMullen, JJ., joined.

M. Todd Ridley, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Jeremy Brent Epperson, District Public Defender, and Mitchell A. Raines, Assistant Public Defender (at post-conviction hearing), for the appellant, William Scott Hunley.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On direct appeal, this Court summarized the facts surrounding the petitioner's convictions for possession of methamphetamine with intent to sell, possession of methamphetamine with intent to deliver, simple possession of marijuana, and possession of drug paraphernalia, as follows:

On the evening of July 22, 2016, officers with the Madison County Narcotics Unit were conducting surveillance of a hotel in Jackson. The officers had received a tip that methamphetamine was being manufactured and sold out of two hotel rooms. The officers watched as the [petitioner] and his minor son pulled into the parking lot and approached one of the rooms. Sergeant Samuel Gilley and Lieutenant Chris Long approached the [petitioner] and explained they had been notified that methamphetamine was being manufactured and sold out of the room he was about to enter. The [petitioner] agreed to allow the officers to search his room and told the officers that there might be marijuana in the room. Sergeant Gilley testified that the [petitioner] gave written consent to the search of his hotel room, and the written consent form was entered into evidence.

Sergeant Gilley testified that he searched the room while Lieutenant Long talked to the [petitioner]. Sergeant Gilley found a small glass jar containing marijuana in close proximity to a desk. He also found a piece of brown paper with names and numbers written on it, which was "consistent with what I would call a drug ledger." He testified based on his experience the ledger is "a perfect indication" of someone selling drugs rather than using drugs. At that point, Sergeant Gilley asked the [petitioner] for permission to search his truck. According to both Sergeant Gilley and Lieutenant Long, the [petitioner] consented to the search.

Sergeant Gilley found a potato chip bag in a pocket located on the back of the front passenger's seat. There were two plastic bags inside the potato chip bag. One bag contained 3.55 grams of methamphetamine, and the other bag contained 8.92 grams of marijuana. Sergeant Gilley also found a set of digital scales. When Sergeant Gilley confronted the [petitioner] about what he had found, the [petitioner] began begging the officers to not take him to jail. Sergeant Gilley testified that the [petitioner] offered to aid in other narcotics investigations. Sergeant Gilley and Lieutenant Long decided not to arrest the [petitioner] because they believed he could assist in other investigations. Sergeant Gilley further testified that at the time of the search the [petitioner] did not seem to be under the influence of any narcotic. On cross-examination, both Lieutenant Long and Sergeant Gilley admitted that they had not observed the [petitioner] selling methamphetamine.

The [petitioner] also testified during the trial. He admitted that he had methamphetamine and marijuana in his truck, but claimed that he had intended to use it himself. He testified that he has been using

methamphetamine for approximately sixteen years. He testified that neither Lieutenant Long nor Sergeant Gilley ever asked him if he was selling methamphetamine. The [petitioner] disputed consenting to the search of his truck. According to the [petitioner], he only agreed to let the officers search his truck after they threatened to call the Department of Children Services to remove his son if he did not allow the officers to search his truck. Additionally, the [petitioner] claimed that the ledger was not his and that it was not in his handwriting.

The State recalled Sergeant Gilley as a witness. Sergeant Gilley testified that he asked the [petitioner] if he was selling methamphetamine and the [petitioner] responded that "he wasn't doing nothing big."

*State v. William Scott Hunley*, No. W2018-00648-CCA-R3-CD, 2019 WL 951404, at *1-2 (Tenn. Crim. App. Feb. 26, 2019), *perm. app. denied* (Tenn. June 21, 2019).

Following the denial of his direct appeal, the petitioner filed a timely pro se petition for post-conviction relief, arguing, in part, trial counsel was ineffective for failing to object to Sergeant Gilley's statement about the petitioner's connections to the "drug world" or request a mistrial following Lieutenant Long's testimony regarding the petitioner's prior "drug dealing." Counsel was appointed, and an evidentiary hearing was held on December 7, 2020, during which the petitioner and trial counsel testified. Although the petitioner asserted numerous claims in his petition, we will summarize only the evidentiary hearing testimony relevant to his claim on appeal.

The petitioner testified that he retained trial counsel to represent him on the current charges. In the nine months prior to trial, the petitioner and trial counsel met four times at the jail, where they reviewed discovery and discussed trial strategies.

During the trial, both Sergeant Gilley and Lieutenant Long testified regarding their familiarity with the petitioner's "past drug dealings." Although trial counsel failed to object to Sergeant Gilley's statement, he did object to Lieutenant Long's testimony. However, "by that time it [was] already embedded in the jury's mind that [the petitioner had] a past drug history." Although the trial court gave the jury a curative instruction, the petitioner testified that trial counsel should have objected to both statements and requested a mistrial. On cross-examination, the petitioner agreed that he testified at trial that the marijuana and methamphetamine were his but denied that he was selling them.

Trial counsel testified that he was retained to represent the petitioner on several drug charges. He met with the petitioner at the jail and reviewed discovery with him. Because the petitioner admitted to possessing the marijuana and methamphetamine, the defense

- 3 -

strategy was to argue the drugs were for personal use. Prior to trial, the State presented a "reasonable offer" which trial counsel encouraged the petitioner to take. However, the petitioner rejected the offer and proceeded to trial.

Regarding Sergeant Gilley and Lieutenant Long's testimony that they were familiar with the petitioner, trial counsel could not recall why he did not object to Sergeant Gilley's statement. Later, when Lieutenant Long made a similar statement, trial counsel objected. The trial court sustained the objection and gave the jury a curative instruction. Trial counsel believed that "Lieutenant Long may have taken advantage of [the fact that trial counsel did not object to Sergeant Gilley's testimony]," which made trial counsel "realize [he] should have objected when Sergeant Gilley did it, and [he] knew that [he] had made a mistake in that regard." On cross-examination, trial counsel agreed the statements about the petitioner's criminal past were damaging because they could have prejudiced the jury.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

*Analysis*

On appeal, the petitioner argues trial counsel was ineffective for failing to object or request a mistrial following Sergeant Gilley and Lieutenant Long's testimony about the petitioner's criminal past. The petitioner also argues the post-conviction court failed to make the required findings in its order denying post-conviction relief. The State contends the post-conviction court properly denied the petition.

## I. Post-Conviction Court's Findings

The petitioner contends the post-conviction court failed to make specific findings of fact and conclusions of law regarding trial counsel's failure to request a mistrial. Tennessee Code Annotated section 40-30-111(b) provides as follows:

> (b)      Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each such ground.

Although this requirement is mandatory, "the failure of the trial judge to abide by the requirement does not always mandate a reversal of the trial court's judgment." *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (citing *Brown v. State*, 445 S.W.2d 669 (Tenn. Crim. App. 1969)). The purpose of the statute is to facilitate appellate

- 4 -

review of the post-conviction court's decision.  Therefore, a remand is not required when the record is otherwise adequate for review, even if the trial court failed to comply with the rule.  *Id.*

In the present case, the post-conviction court failed to address the petitioner's claim that trial counsel was ineffective for failing to request a mistrial following Lieutenant Long's testimony.  However, because this Court is able to review the record of the petitioner's trial, the transcript of the evidentiary hearing, and the post-conviction court's findings, we conclude the record is adequate for our review of the substantive issues.

## II.      Ineffective Assistance of Counsel

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f).  The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them.  *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996).  This Court will not reweigh or reevaluate evidence of purely factual issues.  *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997).  However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness.  *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel presents mixed questions of fact and law.  *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).  Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact.  *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee).  The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

During Sergeant Gilley's trial testimony, the following statement was made:

[The petitioner] is one of our, what we like to call, frequently advised of suspects. You know, we have multiple sources, people on the street. In the drug world, we would get information on him.

The defendant did not make a contemporaneous objection to Sergeant Gilley's statement. Later, during his trial testimony, Lieutenant Long made the following statement:

I recognized [the petitioner]. I've known [the petitioner] for years, all the way back to elementary school days. Also over the years working in Metro Narcotics unit, had lots of intel on [the petitioner] and dealings with him off and on about his drug dealing.

Trial counsel objected, and a bench conference was held, during which the trial court noted that trial counsel had not objected to Sergeant Gilley's statement. The trial court offered to give the jury a curative instruction and asked trial counsel if there were any other curative actions he wanted the trial court to take. Trial counsel stated that the curative instruction "should take care of it," and the trial court instructed the jury "not to consider any reference made as evidence to the claim of prior drug dealings of [the petitioner]."

The petitioner argues these statements were evidence of prior bad acts under Tennessee Rule of Evidence 404(b) and should not have been admissible. However, regardless of the admissibility of the testimony, the petitioner has not shown that he suffered any prejudice. Although trial counsel failed to object to Sergeant Gilley's testimony and failed to request a mistrial following Lieutenant Long's testimony, the petitioner must, in order to show prejudice, establish that such relief would have been granted. *See Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006).

The decision of whether to grant a mistrial is within the sound discretion of the trial court. *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only in the event that a manifest necessity requires such action. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. *Id.* This Court will not disturb the trial court's decision unless there is an abuse of discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990). In evaluating whether the trial court abused its discretion, we may consider: "(1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007).

In applying these factors to the present case, we first note, while the statements occurred during the State's direct examination, they were not responsive to the State's questions. Secondly, the trial court gave the jury a curative instruction following Lieutenant Long's statement, and trial counsel agreed the instruction "should take care of it." We presume the jury followed the instruction. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). Finally, the case against the petitioner was overwhelming. Officers recovered 3.55 grams of methamphetamine and 8.92 grams of marijuana from the petitioner's truck. As this Court noted on direct appeal, "[i]t is undisputed that the methamphetamine found in the truck belonged to the [petitioner]." *William Scott Hunley*, 2019 WL 951404 at *2. In the petitioner's hotel room, officers discovered a ledger containing names and amounts, and, when Sergeant Gilley asked the petitioner if he was selling drugs, the petitioner responded that "he wasn't doing nothing big." *Id.* The petitioner has not established a reasonable probability that, had trial counsel objected to Sergeant Gilley's statement or requested a mistrial following Lieutenant Long's statement, the outcome of the trial would have been different.

Moreover, the petitioner testified at the trial and admitted to possessing the methamphetamine and marijuana found in the hotel room and truck. He also admitted to using drugs for the past sixteen years and went into detail about his daily usage. Although trial counsel testified at the evidentiary hearing that he "knew that [he] had made a mistake"

by not objecting to Sergeant Gilley's statement, a defendant is not entitled to perfect representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). Even if we were to conclude that trial counsel's representation fell below the constitutional standard, the petitioner has failed to demonstrate he was prejudiced by the alleged ineffective representation. Accordingly, he is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE